# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

| | |
|---|---|
| ALUREALS MAYES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No: 1:14-cv-01248-STA-cgc |
| ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

## ORDER AFFIRMING THE DECISION OF THE COMMISSIONER

Plaintiff Alureals Mayes filed this action to obtain judicial review of Defendant Commissioner's final decision denying her application for disability insurance benefits under Title II of the Social Security Act ("Act") and an application for supplemental security income ("SSI") benefits based on disability under Title XVI of the Act. Plaintiff's applications were denied initially and upon reconsideration by the Social Security Administration. Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held on May 1, 2013. On May 22, 2013, the ALJ denied the claim. The Appeals Council subsequently denied the request for review. Thus, the decision of the ALJ became the Commissioner's final decision. For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he was a party. "The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the

1

cause for a rehearing."[1]  The Court's review is limited to determining whether there is substantial evidence to support the Commissioner's decision,[2] and whether the correct legal standards were applied.[3]

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[4]  It is "more than a mere scintilla of evidence, but less than a preponderance."[5]  The Commissioner, not the Court, is charged with the duty to weigh the evidence, to make credibility determinations and resolve material conflicts in the testimony, and to decide the case accordingly.[6]  When substantial evidence supports the Commissioner's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.[7]

Plaintiff was born on May 18, 1984, and has a high school education and two years of college.  She has past relevant work as a fast food worker. Her amended onset date is January 1, 2011.  In her disability report, Plaintiff alleged disability due to scoliosis.

---

[1]  42 U.S.C. § 405(g).

[2]  *Id.*

[3]  *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).  *See also Landsaw v. Sec'y of Health & Human Servs*, 803 F.2d 211, 213 (6th Cir. 1986).

[4]  *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389 (1971)).

[5]  *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[6]  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

[7]  *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The ALJ made the following findings: (1) Plaintiff met the insured status requirements through December 31, 2011; (2) Plaintiff has not engaged in substantial gainful activity since the alleged onset date; (3) Plaintiff has the following severe impairment: scoliosis; but she does not have impairments, either alone or in combination, that meet or equal the requirements of any listed impairment contained in 20 C.F.R. pt. 404, subpt. P, app. 1 of the listing of impairments; (4) Plaintiff retains the residual functional capacity to perform the full range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a); (5) Plaintiff is unable to perform her past relevant work; (6) Plaintiff was a younger individual with a high school education on the alleged amended onset date; (7) transferability of job skills is not material to the determination of disability because Plaintiff's past relevant work was unskilled; (8) considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform; (9) Plaintiff was not under a disability as defined in the Act at any time through the date of this decision.[8]

The Social Security Act defines disability as the inability to engage in substantial gainful activity.[9] The claimant bears the ultimate burden of establishing an entitlement to benefits.[10] The initial burden of going forward is on the claimant to show that he or she is disabled from engaging in his or her former employment; the burden of going forward then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background.[11]

---

[8] R. 10 – 17.

[9] 42 U.S.C. § 423(d)(1).

[10] *Born v. Sec'y of Health & Human Servs*, 923 F.2d 1168, 1173 (6th Cir. 1990).

[11] *Id.*

The Commissioner conducts the following, five-step analysis to determine if an individual is disabled within the meaning of the Act:

1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

2. An individual who does not have a severe impairment will not be found to be disabled.

3. A finding of disability will be made without consideration of vocational factors, if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations.

4. An individual who can perform work that he or she has done in the past will not be found to be disabled.

5. If an individual cannot perform his or her past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.[12]

Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis.[13] Here, the sequential analysis proceeded to the fifth step with a finding that, although Plaintiff cannot perform her past relevant work, a substantial number of jobs exists in the national economy that she can perform.

Plaintiff argues that substantial evidence does not support the ALJ's findings. She specifically argues that the ALJ erred (1) at step two by not finding that her knee pain, depression, and social anxiety were severe impairments, (2) in his credibility assessment, and (3) in his weighing of the medical opinion evidence. Plaintiff's arguments are not persuasive.

Step two of the five-step disability analysis looks at whether the claimant has a "severe medically determinable physical or mental impairment" or "a combination of impairments that is

---

[12] *Willbanks v. Sec'y of Health & Human Servs*, 847 F.2d 301 (6th Cir. 1988).

[13] 20 C.F.R. § 404.1520(a).

4

severe."[14] In the present case, the ALJ found that Plaintiff had the severe impairment of scoliosis. When an ALJ determines that one or more impairments are severe, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"[15] When an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, the ALJ's failure to find additional severe impairments at step two "[does] not constitute reversible error."[16]

The ALJ in this case decided that Plaintiff suffered from a severe impairment, i.e., scoliosis, but that her remaining conditions were not severe. In the remaining steps of the disability determination, the ALJ "consider[ed] limitations and restrictions imposed by all of [Plaintiff's] impairments," including her non-severe impairments.[17] Therefore, any error at step two was harmless.

Moreover, although Plaintiff contends that her knee pain constitutes a severe impairment, the record reveals repeated instances in which Plaintiff walked with a normal gait, displaying good strength and range of motion in her legs and knees, and the record contains no medical

---

[14] 20 C.F.R. § 404.1520(a)(4)(ii).

[15] Soc. Sec. Rul. 96–8p, 1996 WL 374184 at *5.

[16] *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). In *Maziarz*, the agency determined that the claimant suffered from several severe impairments but that his cervical condition was not severe. Because the agency continued with the remaining steps in the disability determination and because the agency "properly could consider claimant's cervical condition in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity," the Court held that any error at step two was harmless and that it was, therefore, "unnecessary to decide" whether the agency erred in failing to find that the claimant's cervical condition constituted a severe impairment. *Id.*

[17] Soc. Sec. Rul. 96–8p, 1996 WL 374184 at *5.

documentation of frequent knee pain that could impose ongoing functional limitations.[18] As for Plaintiff's alleged depression and social anxiety, the ALJ pointed out the absence of ongoing mental health treatment as evidence that Plaintiff's mental impairments were less than severe.[19] Additionally, the ALJ looked at Plaintiff's own function report and consultative psychological examination, each of which detailed behaviors incompatible with severe mental impairment.[20] Thus, the ALJ did not err at step two by failing to find other severe impairments.

As for the ALJ's credibility assessment of Plaintiff, a claimant's credibility comes into question when her "complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence.[21] "To assess credibility, the ALJ must consider "the entire case record," including "any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record."[22] This Court is required to "accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying."[23] Here, the Court finds no error in the ALJ's credibility determination because Plaintiff did not provide

---

[18] R. 267-68, 325, 337, 341.

[19] *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009) (ALJ justified in finding that Plaintiff's failure to seek mental health treatment reflected on the severity of the impairment).

[20] R. 192-99, 298-303.

[21] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007).

[22] *Id.*

[23] *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) (citations omitted).

6

objective medical evidence to establish the intensity and persistence of her alleged symptoms, and the record as a whole does not indicate that her condition was of disabling severity.[24]

The ALJ considered Plaintiff's testimony and concluded that Plaintiff's statements concerning her impairments and their impact on her ability to work were not totally credible. The ALJ noted that Plaintiff's subjective limitations were not well supported by the medical records or by her daily activities, which included taking care of two young children, driving a car, preparing meals, shopping, and performing household chores such as laundry, cleaning, and washing dishes.[25] The ALJ properly found that such behaviors were incompatible with disabling physical or mental limitations.[26]

Regarding Plaintiff's physical complaints, a 2013 MRI of Plaintiff's lumbar spine found only mild narrowing of disc space, no evidence of disc herniation, nerve-root compression, or spinal stenosis, and no nerve damage.[27] Physical-therapy records indicated that Plaintiff had normal range of motion in her shoulders, elbows, wrists, fingers, hips, knees, and ankles, and only slightly reduced muscle strength.[28] Because objective medical evidence failed to support Plaintiff's subjective allegations, the ALJ properly discounted the credibility of those claims.

Additionally, Plaintiff took no medication for her allegedly disabling symptoms, she received mental health treatment on only one occasion in the years following her alleged onset

---

[24] *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1529(c).

[25] R. 193-95.

[26] *See Temples v. Comm'r of Soc. Sec.*, 515 F. App'x 460, 462 (6th Cir. 2013); 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i) (ALJ must consider claimant's daily activities when evaluating her symptoms).

[27] R. 361.

[28] R. 324, 336.

7

date, and she did not see her primary care physician for over a year between January 2012 and March 2013. [29] When Plaintiff did return to her primary physician, it was to seek help with her disability paperwork.[30] An ALJ may consider the treatment an individual has received and whether that treatment supports a finding of disability.[31]

Plaintiff's poor work record also led the ALJ to discount the credibility of her subjective claims. Although Plaintiff completed high school and has a two-year college degree, her employment history was sporadic before she allegedly became unable to work.[32]

Plaintiff argues that the ALJ must do more than "simply ... recite the factors that are described in the regulations for evaluating symptoms."[33] Plaintiff also notes that the ALJ is not permitted to make a conclusory statement that the individual's allegations have been considered. The Court is not persuaded by Plaintiff's argument because the ALJ's credibility determination clearly involved more than a conclusory statement as discussed above, and that determination is supported by substantial evidence.

Next, Plaintiff argues that the ALJ erred by failing to properly consider and weigh the checklist form submitted by Susan Lowry, M.D., Plaintiff's treating physician. Medical opinions are to be weighed by the process set forth in 20 C.F.R. § 404.1527(c). Under the treating

---

[29] R. 119, 141, 267, 299-301.

[30] R. 351.

[31] *See Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 473 (6th Cir. 2014) ("Had Curler suffered from severe pain associated with her back condition, the medical records would have revealed . . . recommendations for more aggressive treatment, and more significant doctor-recommended functional limitations."); SSR 96-7p ("[T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints . . . .").

[32] R. 14, 27, 146-53, 187, 299.

[33] SSR 96-7p, 1996 WL 374186 at *2.

8

physician rule, an ALJ must give controlling weight to the opinion of a claimant's treating physician if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record."[34] The term "not inconsistent" is meant to convey that "a well-supported treating source medical opinion need not be supported directly by all of the other evidence, (i.e., it does not have to be consistent with all the other evidence) as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion."[35]

Dr. Lowry opined that Plaintiff could sit for four hours per eight-hour work day, must alternate between standing and walking every twenty minutes throughout the day, and could never stoop or crouch.[36] Although the checklist provided Dr. Lowry with a space in which to explain the medical findings that supported such postural limitations, her explanation merely referred to Plaintiff's pain when bending.[37] In weighing a medical opinion, an ALJ may consider the degree to which the doctor explains and supports her opinion with other evidence. Here, Dr. Lowry's opinion consisted of a short checklist form with little supporting explanation. Such "opinions," even when offered by a treating physician, are of limited value.[38]

---

[34] 20 C.F.R. § 404.1527(c)(2).

[35] Soc. Sec. Rul. 96–2P.

[36] R. 349-50.

[37] R. 350.

[38] *See Smith v. Comm'r of Soc. Sec.*, 2015 WL 899207 at *15-16 (E.D. Mich. Mar. 3, 2015) (collecting cases examining the weight that should be afforded to checkbox treating physician opinions and noting that "other circuit courts and courts within the Sixth Circuit have cast doubt on the usefulness of such 'checkmark' or 'multiple choice' forms when unaccompanied by explanation or unsupported by physician's notes").

9

The ALJ found Dr. Lowry's opinion more limiting than necessary in light of the objective evidence and Plaintiff's sporadic treatment history and gave the opinion weight only to the extent that it was compatible with sedentary work. The ALJ specifically found that Dr. Lowry's opinion conflicted with evidence indicating that Plaintiff walked with a normal gait, exhibited good range of motion and muscle strength, and reported significant improvement with physical therapy. Because Dr. Lowry failed to explain how Plaintiff's impairments caused such extreme limitations, her opinion was due less weight, and the ALJ gave good reasons for the weight he assigned Dr. Lowry's opinion.

Plaintiff also argues that the ALJ failed to include a function-by-function assessment, as required by SSR 96-8p. SSR 96-8p provides that in determining a claimant's residual functional capacity, the ALJ must "assess [the claimant's] work-related abilities on a function-by-function basis." However, while a "function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing."[39] Instead, "the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record."[40] Here, the ALJ discussed the evidence of record and how such evidence supported his residual functional capacity determination. This determination is supported by substantial evidence.

---

[39] *Delgado v. Commr of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. Mar. 4, 2002) (citation omitted).

[40] *Id.* (citation omitted). *See also, Rudd v. Comm'r of Social Security*, 2013 WL 4767020 at *9 (6th Cir. Sept. 5, 2013) (SSR 96-8p merely requires the ALJ to "address a claimant's exertional and nonexertional capacities and also describe how the evidence supports her conclusions").

At step five, the Commissioner must identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity and vocational profile.[41] The Commissioner may carry this burden by applying the grids[42] which direct a conclusion of "disabled" or "not disabled" based on the claimant's age and education and on whether the claimant has transferable work skills.[43] If a claimant suffers from non-exertional impairments that preclude his or her performing a full range of work at a given exertional level, the Commissioner may not reply on the grids alone; however, if the presence of a non-exertional limitation does not significantly limit the range of work a claimant may perform, then the Commissioner may rely exclusively on the grids.[44]

Here, the ALJ used the grids as a framework and, based on a residual functional capacity for the full range of sedentary work and considering Plaintiff's age, education, and work experience, determined that a finding of not disabled was directed by Medical-Vocational Rule 201.27. That decision is supported by the record as a whole. Because substantial evidence supports the ALJ's determination that Plaintiff was not disabled and the proper rules were followed, the decision of the Commissioner is **AFFIRMED**.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date:   July 20, 2017.

---

[41] *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

[42] 20 C.F.R. Pt. 404, Subpt. P, App. 2.

[43] *Wright v. Massanari*, 321 F.3d 611, 615 (6th Cir. 2003).

[44] *See Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 424 (6th Cir. 2008).